**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Dominic Ali

    v.                          Civil No. 12-cv-364-SM

Edward Reilly, Warden, Northern
New Hampshire Correctional Facility[1]

## REPORT AND RECOMMENDATION

Before the court are Dominic Ali's original complaint, and the addenda thereto (doc. nos. 1 and 6-8), construed together as the complaint in this action for all purposes. Ali asserts claims of violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, and his federal and state constitutional rights. The matter is before the court for preliminary review to determine if the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

---

[1] Plaintiff names Northern New Hampshire Correctional Facility ("NCF") Warden Edward Reilly as the defendant to this action in the complaint caption. Ali also asserts claims against the following NCF employees in the complaint narrative: Chaplain Dana Hoyt; Corrections Officer Watson; Cpl. Nadeau; and Lts. Massy and Berwick.

## Preliminary Review Standard

Pursuant to LR 4.3(d)(2) and 28 U.S.C. § 1915A(a), the magistrate judge conducts a preliminary review of pro se in forma pauperis prisoner complaints before defendants have an opportunity to respond to the claims.  The magistrate judge may direct service of the complaint, or, as appropriate, recommend to the district judge that one or more claims be dismissed if: the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See 28 U.S.C. § 1915A(b); LR 4.3(d)(2).

In determining whether a pro se prisoner complaint states a claim, the court must construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  To determine plausibility, the court treats as true all well-pleaded factual allegations, and construes all reasonable inferences drawn therefrom in plaintiff's favor.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

**Background**

Ali is an inmate in the New Hampshire Department of Corrections ("DOC"), confined at the Northern New Hampshire Correctional Facility ("NCF") in Berlin, New Hampshire.  Ali obtained a religious preference card from the DOC in May 2012, stating that he is a Muslim.  Ali claims that since that date, the NCF warden and staff have discriminated against him and violated his state and federal rights, as explained below.

I.  Jum'ah

Ali alleges that the Qur'an requires Muslims to participate in a group worship ceremony called Jum'ah, led by an Imam, every Friday afternoon.  Ali states that attendance at Jum'ah is mandatory and cannot be made up if it is missed.  Jum'ah, according to Ali's complaint, is the central religious ceremony of the Islamic faith.  No Jum'ah services have been offered to inmates during Ali's incarceration at NCF.

DOC Policy and Procedure Directive ("PPD") 7.17 requires that all group worship services be led either by a chaplain or by an approved religious volunteer.  Ali alleges the DOC claims that it has been unable to find an Imam to lead Jum'ah services.

In October 2012, after Ali filed his initial complaint (doc. no. 1), Chaplain Hoyt arranged for Muslim inmates at NCF to meet with an Imam from the Islamic Society of Greater

3

Manchester.  That Imam, Ali alleges, had "issues with the
administration of the NCF, schedule and coop[e]ration," and has
not returned to lead Jum'ah services.  Am. Compl. at 6 (doc. no.
8).  The court construes this allegation to assert that NCF
officials failed to cooperate with the Imam, resulting in the
Imam's failure to return to NCF.  Ali alleges that when NCF
inmates have requested permission to meet for group prayer
without an Imam, prison officials have denied that request,
citing PPD 7.17.

II.  Ramadan

      Ali asserts that Muslims fast from sunrise to sunset for
the month of Ramadan, but may eat at night and before sunrise.
Ali alleges that Chaplain Hoyt provides fasting Muslims with
food during Ramadan that is "unhealthy," not "nutritionally
adequate," and poses an "immediate danger to the health and
wellbeing of . . . all inmates who consume it."  Compl. at 6
(doc. no. 1).  Ali alleges that fasting Muslim inmates receive
small portions, including "birdseeds" (dry food mixed with
rocks), id. at 5, and uncooked frozen food, that he lost almost
ten pounds and was hungry every night during Ramadan in 2012,
and that problems with the NCF and the food served to him caused
him stress and emotional problems during Ramadan.  Id. at 4-6.

III. <u>August 2012 Cell Search and Removal from Ramadan List</u>

On August 10, 2012, during Ramadan, NCF Corrections Officer ("C.O.") Watson and Cpl. Nadeau conducted a "shakedown" of Ali's cell. Ali alleges that Watson is not properly trained to deal with inmates practicing their religion, and that the officers threw out his legal mail, damaged his property, and took away his Ramadan food when they searched his cell. Ali states that Watson threatened him when he objected about the Ramadan food.

Ali alleges that Muslims may fast for up to forty days during Ramadan, with extra days allotted to make up for sickness and recovery time. Ali chose not to partake in the Ramadan fast on August 13, 2012, due to stress. Ali asserts that Lts. Berwick and Massy, and C.O. Watson, as a result, confronted him and then removed him from the Ramadan list without speaking to the chaplain first, denying Ali the ability to fast during the remainder of Ramadan.

Claims

In the complaint (doc. nos. 1, 6-8, and 13), Ali has asserted the following claims against NCF officials, arising under RLUIPA, 42 U.S.C. § 1983, and the state constitution:

> 1.    The failure of Hoyt and NCF Warden Reilly to provide Jum'ah services at the NCF, and their reliance on PPD 7.17, has violated Ali's: (a) First Amendment right to freely exercise his religion; (b) rights under RLUIPA; and (c) Fourteenth Amendment right to equal protection.

2.    Hoyt's failure to ensure that Ali received
healthy food during Ramadan has violated Ali's: (a) First
Amendment right to freely exercise his religion; (b) rights
under RLUIPA; (c) Fourteenth Amendment right to equal
protection; and (d) Eighth Amendment right to humane
conditions of confinement.

3.    Defendants Watson, Massy, Berwick, and Reilly
violated Ali's: (a) First Amendment right to freely
exercise his religion; and (b) his rights under RLUIPA, by
denying Ali the ability to fast for Ramadan.

4.    Defendants Watson and Nadeau violated Ali's: (a)
First Amendment right to freely exercise his religion; and
(b) Fourteenth Amendment right to equal protection, in
that, motivated by discriminatory intent, Watson and Nadeau
conducted a "shakedown" of Ali's cell, destroyed his legal
work and other belongings, and discarded his Ramadan food.

5.    Defendants' conduct violated Ali's equal
protection and religious freedom rights under the New
Hampshire Constitution.

## Discussion

I.  Claims for Damages

    A.    Official Capacity Claims

The Eleventh Amendment bars Ali's claims for damages

asserted against NCF officials in their official capacities.

See Sossamon v. Texas, 131 S. Ct. 1651, 1660 (2011) (RLUIPA does

not abrogate state's sovereign immunity from damage claims);

Barrett v. Coplan, 292 F. Supp. 2d 281, 287 (D.N.H. 2003)

(Section 1983 does not abrogate state's sovereign immunity, and

state has not waived it).  Accordingly, the court should dismiss

all of Ali's claims for damages asserted against defendants in their official capacities.

    B.    Individual Capacity RLUIPA Claims

    Ali also seeks damages for his RLUIPA claims, asserted against defendants in their individual capacities.  Although the First Circuit has reserved judgment on the issue, see Kuperman v. Wrenn, 645 F.3d 69, 79 (1st Cir. 2011), every federal appellate court to address the issue has decided that RLUIPA does not authorize claims for damages asserted against state officials in their individual capacities.  See, e.g., Stewart v. Beach, 701 F.3d 1322, 1334-35 (10th Cir. 2012) (Congress in exercising its spending authority, authorized claims against RLUIPA grant recipients, and did not authorize claims asserted against individuals in their personal capacities); see also Cryer v. Spencer, No. 11-11953-PBS, 2013 WL 1192354, *6-7 (D. Mass. Mar. 21, 2013) (collecting cases).  Following the well-reasoned authority of the appellate courts to have addressed the issue, this court should dismiss Ali's RLUIPA claims for damages asserted against defendants in their individual capacities.

II.  State Law Claims

    This court has supplemental jurisdiction over Ali's state constitutional claims that arise from the same set of operative

facts as his federal constitutional claims.  See 28 U.S.C.
§ 1367.  State constitutional provisions, however, unlike their
federal counterparts, are not generally enforceable through a
claim for damages, and this court is not the proper forum for a
plaintiff to seek to expand the scope of remedies available for
alleged violations of state constitutional rights.  See Bleish
v. Moriarty, No. 11-CV-162-LM, 2011 WL 6141271, *5-*6 (D.N.H.
Dec. 9, 2011) (dismissing without prejudice claims asserting
violations of state constitutional rights to free speech and
assembly); Bourne v. Town of Madison, 494 F. Supp. 2d 80, 94
(D.N.H. 2007) (finding that state law lacks statute analogous to
42 U.S.C. § 1983 and declining to imply cause of action for
damages under Part I, Articles 1 and 12); see also Marquay v.
Eno, 139 N.H. 708, 722, 662 A.2d 272, 282-83 (1995) (declining
to imply cause of action for damages for violations of Part I,
Article 2, where tort law provided adequate remedy).
Accordingly, this court should dismiss Ali's claims for damages
for alleged violations of his state constitutional rights to
religious freedom and equal protection.

III. Jum'ah

   A.    First Amendment, RLUIPA, and Part I, Article 5

     The First Amendment's Free Exercise Clause "requires
government respect for, and noninterference with, the religious

beliefs and practices of our Nation's people." Cutter v.
Wilkinson, 544 U.S. 709, 719 (2005).  An inmate's First
Amendment right to exercise his religion in jail may be
restricted by prison officials only when such a restriction is
"reasonably related to legitimate penological interests." Beard
v. Banks, 548 U.S. 521, 528 (2006) (internal quotation marks
omitted) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  A
court evaluating a claim that a prison regulation interfered
with an inmate's rights under the First Amendment must accord
prison administrators significant deference in defining
legitimate goals for the corrections system, and for determining
the best means of accomplishing those goals.  See Overton v.
Bazzetta, 539 U.S. 126, 132 (2003).  Where jail policies address
legitimate concerns, the inmate bears the burden of showing that
the policy was an exaggerated response to those concerns.  See
id.

RLUIPA provides greater protection than the First Amendment
with respect to inmates' religious practices.  See Kupermann,
645 F.3d at 79.  RLUIPA prevents prisons from "substantially
burdening an inmate's religious exercise unless the regulation
under attack is the least restrictive way to advance a
compelling state interest."  Id.  A "substantial burden" has
been described as "one that '[put[s] substantial pressure on an

adherent to modify his behavior and to violate his beliefs.'"
Spratt v. R.I. Dep't of Corrs., 482 F.3d 33, 38 (1st Cir. 2007)
(citation omitted); see also Washington v. Klem, 497 F.3d 272,
280 (3d Cir. 2007) ("substantial burden exists where: 1) a
follower is forced to choose between following the precepts of
his religion and forfeiting benefits otherwise generally
available to other inmates versus abandoning one of the precepts
of his religion in order to receive a benefit; [or] 2) the
government puts substantial pressure on an adherent to
substantially modify his behavior and to violate his beliefs").

    The facts alleged by Ali as to the lack of Jum'ah services
at NCF echo the claims of two other state prison inmates who
have filed RLUIPA and First Amendment claims against DOC
officials in this court.  See, e.g., Glenn v. N.H. State Prison
Family Connections Ctr., No. 11-CV-475-JD, 2012 WL 2413934
(D.N.H. June 4, 2012), report and recommendation approved, No.
11-CV-475-JD, 2012 WL 2401734 (D.N.H. June 26, 2012); Knapp v.
Kench, No. 11-CV-491-PB, 2012 WL 2061701 (D.N.H. May 14, 2012),
report and recommendation approved, No. 11-CV-491-PB, 2012 WL
2061598 (D.N.H. June 6, 2012).  The controlling law has not
changed in the interim, and the similarities between all three
cases warrant the same treatment at this preliminary stage of
the case.  Accordingly, in an order issued this date, this court

has directed service of Ali's First Amendment, RLUIPA, and Part
I, Article 5 claims for injunctive relief, relating to the
failure to ensure Muslim inmate access to Jum'ah, as well as
Ali's damages claims asserted against Hoyt and Reilly in their
personal capacities, for the alleged violations of Ali's First
Amendment rights with respect to access to Jum'ah services.

    B.  <u>Equal Protection</u>

The Fourteenth Amendment's Equal Protection Clause requires
states to treat similarly situated people in a similar manner.
<u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432,
439 (1985).  Generally, to establish an equal protection claim,
a plaintiff must demonstrate that, (1) compared with others
similarly situated, he was selectively treated, and (2) that the
selective treatment was motivated by purposeful discrimination
on some improper basis, such as plaintiff's membership in a
particular race or religion.  <u>See</u> <u>Hernandez v. New York</u>, 500
U.S. 352, 360 (1991).  The same standard applies in evaluating
Ali's state equal protection claim.  <u>See, e.g.</u>, <u>In re Sandra H.</u>,
150 N.H. 634, 637-39, 846 A.2d 513, 518 (2004).

Ali has not asserted any facts which would allow the court
to infer that Ali was treated differently than any similarly
situated non-Muslim, with respect to the lack of access to group
worship.  Specifically, he has not alleged that NCF officials

allowed non-Muslim inmates to congregate for worship without a
chaplain or approved volunteer, that defendants treated Muslims
differently in attempting to procure volunteers for group
services, or that any inmate belonging to a similarly-sized,
non-Muslim faith community at NCF had access to a paid chaplain
whenever outside volunteers were unavailable.  See, e.g., Cruz v.
Beto, 405 U.S. 319, 322 n.2 (1972) ("A special chapel or place
of worship need not be provided for every faith regardless of
size; nor must a chaplain, priest, or minister be provided
without regard to the extent of the demand.").  Because Ali has
failed to state an actionable federal or state equal protection
claim relating to Jum'ah services, the court should dismiss
Claim 1(c) and the analogous state equal protection claim.

IV.  Ramadan Food

    A.   First Amendment, RLUIPA, and Part I, Article 5

    Ali has alleged that Hoyt denied him reasonably healthy and
nutritious food during Ramadan in 2012.  The complaint further
suggests that the practice is likely to recur.  This court
accepts those factual allegations as true for the purposes of
preliminary review.  The complaint thus states a plausible claim
that the NCF policy of providing allegedly unhealthy food to
fasting Muslim inmates at NCF substantially burdens their
religious practices, and is not reasonably related to any

legitimate institutional interest.  Accordingly, in an order
issued this date, the court has directed service of Ali's
RLUIPA, First Amendment, and Part I, Article 5 claims for
injunctive relief, and a claim for damages, pursuant to 42
U.S.C. § 1983, as to Chaplain Hoyt.

> B.   Equal Protection

Ali has alleged that at NCF, unlike at NHSP, Muslims
observing the Ramadan fast do not receive the same food as non-
fasting inmates.  Furthermore, he has alleged that at NCF, the
food provided to fasting Muslims presents a health hazard.
Finding that the complaint alleges facts sufficient to state a
plausible claim of an equal protection violation as between the
treatment of fasting Muslim NCF inmates and non-fasting inmates,
the court directs service of this claim for damages and
injunctive relief, pursuant to 42 U.S.C. § 1983, and for
injunctive relief, pursuant to that authority and the state
constitution, as to Chaplain Hoyt's failure to provide healthy
Ramadan food.

> C.   Eighth Amendment

Ali has alleged that the unhealthy food provided during
Ramadan violated his Eighth Amendment right to humane conditions
of confinement.  "A prison official's 'deliberate indifference'

to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994). "'[D]eliberate indifference' . . . requir[es] a showing that the official was subjectively aware of the risk." Id. at 829.  Ali has not alleged that he complained about the food to any defendant, or that any defendant was subjectively aware that the food presented a threat to Ali's health.  Therefore, Ali has failed to show any prison officials' deliberate indifference to his health and safety.  Accordingly, the court should dismiss Ali's Eighth Amendment claim relating to Ramadan food.

> D.   Warden Reilly

Ali has asserted claims against Warden Reilly in his supervisory capacity.  Section 1983 requires a showing that the supervisor's conduct constituted "'supervisory encouragement, condonation or acquiescence[,] or gross negligence . . . amounting to deliberate indifference.'"  See Grajales v. P.R. Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012) (citation omitted). Ali has failed to allege that Reilly encouraged, condoned, acquiesced, or was deliberately indifferent to Chaplain Hoyt's provision of unhealthy food during Ramadan.  Accordingly, the court should dismiss Claim 2 to the extent it is asserted against Reilly.

V.    Removal from Ramadan List

Ali has alleged that Muslim inmates can choose not to fast if they are sick, and that he chose not to do so on August 13, 2012, due to stress.  He further alleges that NCF officers, upon finding him in the chow hall, removed him from the list of inmates allowed to observe Ramadan.  An inmate who alleges that prison officials barred him from observing religious practices because he failed to maintain a fast on one occasion may state an actionable claim for relief under RLUIPA, the First Amendment, and 42 U.S.C. § 1983, if, among other things, the burden placed on his religious practices was substantial.  See Lovelace v. Lee, 472 F.3d 174, 189 (4th Cir. 2006).  Here, the complaint states a plausible claim that removing Ali from the Ramadan list imposed a substantial burden on his religious practices, and the complaint further states a plausible claim that the decision was not reasonably related to any legitimate purpose.  Therefore, in the order issued this date, this court has directed service of Ali's RLUIPA, First Amendment, and Part I, Article 5 claims for injunctive relief, as to defendants' refusal to allow him to observe the Ramadan fast after August 13, 2012, and a claim for damages pursuant to 42 U.S.C. § 1983, asserted against defendants Watson, Berwick, Massy, and Reilly.

VI.  <u>Cell Search</u>

The facts Ali asserts in support of his First Amendment claim with respect to the "shakedown" of his cell are insufficient to demonstrate substantial interference with his religious practices, or that the search was not reasonably related to a legitimate penological purpose.  Moreover, stripped of the conclusory allegation about race discrimination, the remaining allegations fail to state an equal protection claim. Accordingly, the court should dismiss all of Ali's claims relating to the cell search.

## Conclusion

For the foregoing reasons, the court should dismiss Claims 1(c), 2(d), 4, and the state constitutional claims that arise from the same facts.  The court should further dismiss all claims for damages asserted against defendants in their official capacities, and all claims for damages asserted against defendants under RLUIPA and state law.  In an order issued this date, this court has directed service of the remaining claims in the complaint.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  <u>See</u> Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's

order.  See <u>United States v. De Jesús-Viera</u>, 655 F.3d 52, 57
(1st Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1045 (2012); <u>Sch.
Union No. 37 v. United Nat'l Ins. Co.</u>, 617 F.3d 554, 564 (1st
Cir. 2010) (only issues fairly raised by objections to
magistrate judge's report are subject to review by district
court; issues not preserved by such objection are precluded on
appeal).

_____
Landya McCafferty
United States Magistrate Judge


June 3, 2013

cc:  Dominic Ali, pro se

LBM:nmd