UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Dominic Ali, | \* |
|     Plaintiff | \* |
| | \* |
| v. | \*   12-cv-00364-SM |
| | \* |
| | \* |
| Warden Edward Reilly, Chaplain Dana Hoyt, | \* |
| Scott Watson, John Masse, Shanon Berwick | \* |
|     Defendants | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>AFFIDAVIT OF MAJOR JON FOUTS</u>

I, Major Jon Fouts, declare and affirm as follows:

1.  I am currently employed by the New Hampshire Department of Corrections ("NHDOC"). I currently work at the New Hampshire State Prison for Men ("NHSP/M") as its Chief of Security. I have been employed by the NHDOC since August 1990. I worked up through the ranks, starting as a corrections officer. I have also been employed as a part-time police officer for the Town of Ashland, New Hampshire from 1991 to 1992, and a Military Police Officer for the National Guard from 2004 to 2005. As Chief of Security I receive and review copies of all incidents reports of activities occurring at NHSP/M. I also have frequent contact with Investigations and staff that monitor gang activity in NHSP/M and other NHDOC facilities to keep advised of current issues, activities, and methods being used by gangs in our facilities. The following is based on my personal experience and knowledge.

2.  In addition to my 23 years of experience with the NHDOC I have obtained numerous certifications and have attended numerous trainings, focusing on the area of emergency preparation for correctional institutions as well as overall prison and inmate

1

management.  These training and certification programs were presented and administrated by organizations such as NH Police Standards and Training Counsel, The National Institute of Corrections (DOJ/NIJ) American Correctional Association, and the NH Bureau of Training and Education.

3.     As Major I am in charge of all uniformed security staff at NHSP/M.  This includes making sure that all security related Policy and Procedure Directives ("PPD") are followed by security staff and ensuring that the PPDs make the institution as secure as possible.

4.     The policy of only allowing inmate groups to meet in the presence of approved religious volunteers or NHDOC staff is necessary to ensure prison security.  The NHDOC does not allow any group of inmates to meet unsupervised.  This requirement does not apply to just religious activities, but to any recreational or educational activity.  When inmates are working, attending a group meeting for any treatment, or even attending an educational course, inmates are required to be supervised by a non-inmate.  When inmates from different housing units are allowed to meet unsupervised, the chances of contraband being passed, communications between gangs occurring, or even inmates attacking other inmates increases.  The NHDOC has a legitimate security interest in keeping the all of our facilities as safe as possible, and doing that requires that all inmate groups be supervised by a NHDOC staff member, or an approved religious volunteer if the group meeting is religious in nature, or other approved volunteer if the activity is not a religious activity such as a class of an Alcoholics Anonymous meeting.

5.     Not allowing inmates to lead group meetings or supervise other inmates is also necessary for prison security.  If inmates were permitted to lead other inmates or take positions of authority over other inmates, a number of problems would arise.  The first of which, is that an inmate could not be held responsible for not being able to control the group of inmates he was

supervising. Unlike an employee that can be disciplined or a volunteer that can be barred from the facility, inmates cannot be discharged from the facility for poor performance.  Conversely, if the inmates are being kept under control, there is a concern as to whether the actions taken to accomplish it may be overly coercive.  Other concerns include inmates using the position of power to accumulate followers and influence that will allow them to strong-arm weaker inmates for a variety of purposes including extortion of food, contraband, smuggling and even sexual favors.  There could also be situations where, if a weaker inmate is placed in charge of a group of inmates, a stronger inmate in that group could manipulate the weaker inmate to the same purposes.  Furthermore, if inmates are supervising inmate groups opportunities to pass contraband, communicate with fellow gang members that an inmate would not normally see, and perform hits on inmates from other housing units that they do not normally see would all increase.  These are the security concerns that are the basis for the policy that inmates are not allowed to lead any type of group activity.

I declare that the foregoing is true and correct.


Dated: August 13, 2013                                    /s/ Maj. Jon H. Fouts_____
                                                                       Major Jon Fouts